# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GENERAL ELECTRIC BUSINESS FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ABRAHAM GALBUT, SETH FROHLICH, ANDREW GREENBAUM, NEIL GREENBAUM, and ERIC GALBUT, <br><br> Defendants. | Case No. 10 C 5010 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On August 10, 2010, Plaintiff, General Electric Business Financial Services, Inc., f/k/a Merrill Lynch Business Financial Services, Inc., ("GEBFS"), filed a Complaint against Defendants Abraham Galbut, Seth Frohlich, Andrew Greenbaum, Neil Greenbaum, and Eric Galbut (collectively, "Defendants") to collect on a loan agreement entered into by GEBFS and Gardens of Bridgehampton, LLC ("Bridgehampton") that was guaranteed by each Defendant. GEBFS brings claims for breach of the Limited Joinder Agreement against all Defendants (Count I) and breach of guaranty against each Defendant (Counts II through VI, respectively).

Defendants' Motion to Dismiss on the basis of improper venue, abstention, and failure to state a claim was denied on December 1, 2010. (Dkt. No. 25.) Defendants filed an Answer on January 5, 2011, in which they allege five affirmative defenses: (A) waiver; (B) estoppel; (C) improper acceleration of the note; (D) failure to mitigate damages; and (E) contribution to damages by failing to fund the loan. (Dkt. No. 28.)

Now before the Court is GEBFS' Motion for Summary Judgment. GEBFS seeks entry of a judgment in the amount of $46,572.19 against all Defendants on Count I and judgment in the amount of $6,054,523.81, against each Defendant on Counts II through VI. (Dkt. No. 45.)

## BACKGROUND

The following facts are taken from the Parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.[1]

*The Parties and Agreements*

GEBFS is a Delaware corporation with its principal place of business in Chicago, Illinois. (GEBFS' Rule 56.1(a)(3) ¶ 1.) GEBFS was formerly known as Merrill Lynch Business Financial Services ("Merrill Lynch").[2] (*Id.*)

Defendants Abraham Galbut, Seth Frohlich, and Eric Galbut are citizens of Miami Beach, Florida. (*Id.* ¶¶ 2-3, 6.) Defendants Andrew Greenbaum and Neil Greenbaum are citizens of Boca Raton, Florida. (*Id.* ¶¶ 4-5.) Defendants were each principals of Hudson Capital.

---

[1] Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Local Rule 56.1(b)(3)(B) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Under Local Rule 56.1(b)(3)(C), the nonmoving party may file a statement of additional facts and the moving party may submit a concise reply under Local Rule 56.1(a)(3). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

[2] GEBFS will be used throughout to refer to both entities.

2

The Court has subject-matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332(a) because this is an action for damages in excess of $75,000, exclusive of interest and costs, and there is complete diversity between the parties. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the Northern District of Illinois because the complained-of conduct in part occurred within the district. (*See* Dkt. No. 25 at 2.)

In 2005, Hudson Capital became interested in the Gardens of Bridgehampton, a multi-family residential project under construction in Jacksonville, Florida, which is the subject of this lawsuit. (Defs.' 56.1(b)(3)(C) ¶ 1; GEBFS' 56.1(a)(3) ¶ 10.) Hudson Capital historically had a good relationship with GEBFS because it had financed three projects for Hudson. (Defs.' 56.1(b)(3)(C) ¶ 3.) Defendants' primary contact at GEBFS was Richard Kumnick, of GEBFS' Atlanta office. (*Id.* ¶ 4.)

On December 27, 2005, Bridegehampton, entered into a loan agreement ("Loan Agreement") with GEBFS, whereby GEBFS agreed to make a first mortgage loan (the "Loan") to Bridgehampton in an original principal amount of $48,700,000.00 for the acquisition, development, and marketing costs relating to the Gardens. (GEBFS' 56.1(a)(3) ¶ 10.)

In connection with the Loan, Bridgehampton executed a Promissory Note ("Note A"), dated December 27, 2005, in the original principal amount of $41,360,000.00, and a Promissory Note ("Note B"), dated December 27, 2005, in the original principal amount of $7,340,000.00 (together, the "Note"). (*Id.* ¶ 11.)

Contemporaneously with the Note, each Defendant executed a Payment Guaranty (each separately, a "Guaranty" and together, the "Guaranties") and a Limited Joinder Agreement (together, the "Limited Joinder"). (*Id.* ¶¶ 12, 16.)

3

Each Guaranty provides:

> 1. Guarantor absolutely, unconditionally and irrevocably guarantees: (i) the full and prompt payment of the principal of and interest on the Note when due . . . ; and (ii) the full and prompt payment of any Enforcement Costs. . . .
>
> * * *
>
> 2. In the event of any Default by Borrower in the payment of the Indebtedness, after the expiration of any applicable cure or grace period, Guarantor agrees, on demand by Lender, or any holder of the Note (which demand may be made concurrently with notice to Borrower that Borrower is in default of its obligations), to pay the Indebtedness regardless of any defense, right of set-off or claims which Borrower or Guarantor may have against Lender or the holder of the Note.
>
> * * *
>
> 5. This is an absolute, present and continuing guaranty of payment and not of collection. Guarantor agrees that this Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any other security or collateral given in connection herewith or with the Note, Loan Agreement, Mortgage or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Mortgage or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right.

(*Id.* ¶ 13.)

Each Guaranty also provides that:

> All of the remedies set forth herein and/or provided for in any of the other Loan Documents or at law or equity shall be equally available to Lender, and the choice by Lender of one such alternative over another shall not be subject to question or challenge by Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding or counterclaim by Lender to recover or seek any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy.

(*Id.* ¶ 14.)

4

Furthermore, each Guaranty states:

> [A]ll rights at law or in equity to seek subrogation, contribution, indemnification or any other form of reimbursement of repayment from Borrower or any other person or entity now or hereafter, primarily or secondarily liable for any of the Indebtedness.

(*Id.* ¶ 15.)

The Limited Joinder provides, in relevant part:

> Waivers. To the fullest extent permitted by applicable law, each Principal waives all rights and defenses of sureties, guarantors, accommodation parties and/or comakers and agrees that its obligations under this Joinder shall be direct, primary, absolute and unconditional and that its obligations under this Joinder shall be unaffected by any of such rights or defenses, including . . . (g) Any acts or omissions of Lender which vary, increase or decrease the risk on any Principal.

(*Id.* ¶ 16.) The Limited Joinder furthermore provides:

> All losses, damages, causes of action, suits and Expenses incurred by [GEBFS] or any affiliate or agent thereof as a result of . . . (iii) misapplication, misappropriation of or conversion of any rents, proceeds or funds deriving from (A) the Project . . .

(*Id.* ¶ 17.)

At some point, Kumnick left Merrill Lynch and GEBFS assumed ownership of the Loan. (Defs.' 56.1(b)(3)(C) ¶ 13.)

### *Bridgehampton's Default*

Bridgehampton defaulted under the Loan Agreement by failing to timely pay GEBFS: (i) interest due on February 1, 2008, in the amount of $67,483.22; and (ii) the real estate and insurance escrow installment for real estate taxes required under the Loan Agreement of $66,019.01 due on February 1, 2008. (GEBFS' 56.1(a)(3) ¶ 18.) Any interest reserve remaining on the Loan as of February 1, 2008, could not be utilized to satisfy the real estate and insurance escrow installment. (*Id.* ¶ 19.)

5

GEBFS provided notice of this default to Bridgehampton and Defendants on February 12, 2008. (*Id.* ¶ 18.) As a result of Bridgehampton's failure to pay amounts owed under the Loan Agreement, an Event of Default (as defined in the Loan Agreement) occurred and is continuing. (*Id.* ¶ 19.)

As a result of this Event of Default, GEBFS accelerated the maturity date of the Note and declared all sums due under the Bridgehampton Loan documents, including, but not limited to, principal, all accrued and unpaid interest, late fees and any other amounts due and payable under the Loan documents. (*Id.* ¶ 20.) GEBFS sent a demand for payment of the Guaranteed Amount to Defendants on April 11, 2008. (*Id.* ¶ 21.) Based on the acceleration of the maturity date, the Loan matured on December 31, 2008. (*Id.* ¶ 22.) The Loan has not been repaid. (*Id.*) GEBFS sent a formal written demand for full payment of the amounts outstanding under the Loan documents to Bridgehampton on April 1, 2010. (*Id.* ¶ 23.) GEBFS sent demand letters, requesting payment of the Guaranteed Amount, to each of the Defendants on April 5, 2010. (*Id.* ¶ 24.)

To date, Defendants have failed to pay the Guaranteed Amount, nor has Bridgehampton paid the other outstanding amounts owed under the Loan documents. (*Id.* ¶ 25.) Defendants contest that they are liable for payment of the Guaranteed Amounts pursuant to the Payment Guaranties. (Defs.' 56.1(b)(3)(B) ¶ 25.)

*The Foreclosure Proceedings*

GEBFS subsequently filed a foreclosure action. (GEBFS' 56.1(a)(3) ¶ 26.) The foreclosure action proceeded in the Circuit Court of the Fourth Judicial Circuit in Duval County, Florida, and is captioned *GE Business Financial Services v. Gardens of Bridgehampton, LLC, et. al.*, Case No. 16-2010-CA-005704. (*Id.*)

Bridgehampton and GEBFS submitted to the Court a Stipulated Judgment of Foreclosure, and, on December 14, 2010, the Court entered Summary Final Judgment of Foreclosure, specifically finding that: "Defendant Gardens of Bridgehampton, LLC ("Bridgehampton") is in default and breach of the Notes and Mortgage, as those terms are defined in Plaintiff's Motion for Summary Judgment." (*Id.* ¶ 27.)

On February 9, 2011, the Duval County Clerk of the Circuit and County Courts issued a Certificate of Sale. (*Id.* ¶ 28.) GEBFS was issued a Certificate of Title on February 23, 2011. (*Id.* ¶ 29.)

### *Sequestration of Rents*

On July 6, 2010, in response to a motion filed by GEBFS, the Duval County Circuit Court entered an order on Plaintiff's Motion for Sequestration of Rents ("Sequestration Order"), requiring Bridgehampton, among other things, to turn over to its counsel all rents collected after the date of the order, pending the Court's determination of the monthly budget for the mortgaged properties. (*Id.* ¶ 30.) Brideghampton has failed to turn over to its counsel all rents collected after the date of the Sequestration Order and has appealed the Sequestration Order. (*Id.* ¶ 31.)

Bridgehampton's July Net Operating Income reveals that Bridgehampton misappropriated rents, in violation of the Sequestration Order. (*Id.* ¶ 32.)[3]

---

[3] Defendants deny this statement, stating "There is an issue of material fact as to whether any rents were 'misappropriated.'" Defendants fail to cite to any record evidence, and, therefore, Defendants' denial is insufficient to create a genuine issue of fact. *See Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (*Serfecz*) (holding that if the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.").

GEBFS made a demand on each Defendant for repayment of the amounts misappropriated by Bridgehampton pursuant to the terms of the Limited Joinder. (*Id.* ¶ 34.) On February 22, 2011, the Duval County Circuit Court found that Bridgehampton would be required to turn over rents in the amount of $46,572.19. (*Id.*)

According to GEBFS, the Note A loan balance was $12,504,993.37, and the Note B loan balance was $2,316,430.44. (*Id.* ¶ 36.) The foreclosure sale price was $206,900.00. (*Id.* ¶ 36.) The guaranteed Indebtedness is equal to the Loan Commitment less the product of $80,000 and the number of condominium units then encumbered by the Mortgage. (*Id.*) Therefore, GEBFS argues that as of February 1, 2010, the Limited Recourse Liability under each Guaranty for the 107 units encumbered by the Mortgage is computed as follows:

Note A Loan Balance $12,504,993.37

Note B Loan Balance $2,316,430.44

Total Loan Commitment $14,821,423.81

Foreclosure Sale Price ($206,900.00)

Less: 107 condominiums x $80,000.00 ($48,560,000.00)

Limited Recourse Liability $6,054,523.81

(*Id.* ¶ 36.)

Although Defendants deny that they are liable under the Guaranties and Limited Joinder, they do not contest these amounts but, rather, argue that GEBFS's liability is limited by its failure to mitigate damages. (Defs.' 56.1(b)(3) ¶ 36.)

8

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz*, 67 F.3d at 596 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal citation omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

**ANALYSIS**

*Breach of Guaranty and Limited Joinder*

GEBFS moves for summary judgment on its claims that each of the Defendants breached the Guaranty and Limited Joinder when they failed to pay interest and escrow due on February 1, 2008.

The parties agree that Illinois law governs these claims. To establish a breach of contract claim under Illinois law, a plaintiff must establish: (1) the existence of a valid

9

and enforceable contract; (2) plaintiff's substantial performance; (3) defendant's breach; and (4) damages. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Carlton at the Lake, Inc. v. Barber*, 928 N.E.2d 1266 (Ill. 2010).

In their response brief, Defendants do not deny that Bridgehampton breached the Loan Agreement. Nor do Defendants dispute material facts relating to their liability under Payment Guaranties and Limited Joinder. *See Bank of America, N.A. v. Shelbourne Dev. Group., Inc.*, No. 09 C 4963, 2011 WL 3439253, at *6 (Aug. 5, 2011) (holding that undisputed facts show that borrower breached loan agreement under similar circumstances).

Defendants argue that their affirmative defenses bar summary judgment. However, Defendants have not presented evidence disputing the material facts regarding their liability pursuant to the Payment Guaranties, relating to the Loan Agreement. "To establish a *prima facie* case for enforcement of a guaranty under Illinois law, the plaintiff must 'enter[ ] proof of the original indebtedness, the debtor's default, and the guarantee." *Gen. Elec. Bus. Fin. Servs., Inc. v. Silverman*, 693 F. Supp. 2d 796, 799 (N.D. Ill. 2010) (*Silverman*) (quoting *Mid-City Indus. Supply Co. v. Horwitz*, 476 N.E.2d 1271, 1277 (Ill. App. Ct. 1985)). As discussed above, Bridgehampton executed the Loan Agreement and related Notes, evidencing its indebtedness to GEBFS. The undisputed facts further establish that each Defendant executed the Guaranty.

Defendants argue that they negotiated with Kumnick an oral contract involving a "burnoff guaranty" and "mandatory partial pay down" *in lieu* of the unconditional

10

Guaranties and Limited Joinder.[4] (Defs.' 56.1(b)(3)(C) ¶¶ 6-13.) To that end, Defendants argue that they executed blank counterpart signature pages that were later attached to the relevant Loan documents. (*Id.* ¶ 9.) In their response, Defendants suggest that they signed the Payment Guaranties without reading them because they relied on Kumnick's alleged representations that there would be no unconditional payment guaranties in the final closing documents. (*See* Defs.' 56.1(b)(3)(C) ¶ 9.)

Defendants' argument is unavailing in light of the axiomatic principle of contract law that "a person who signs a contract is presumed to know its terms." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (*Paper Express*); *see also Dugan v. R.J. Corman R.R. Co.*, 344 F.3d 662, 667 (7th Cir. 2003) (noting that there is no "I didn't read it" defense to breach of contract). Defendants' argument is further unpersuasive as their deposition indicates that they are sophisticated commercial real estate developers (two of whom are attorneys) and were represented by counsel in the contract negotiations. (*See* GEBFS' Resp. to Defs.' 56.1(b)(3)(C) ¶ 5, 9.) *Cf. Paper Express*, 972 F.2d at 757 (binding two sophisticated business people to the terms of a contract though some were written in a foreign language); *Children's Surgical Found., Inc. v. Nat'l Data Corp.*, 121 F. Supp. 2d 1221, 1226 (N.D. Ill. 2000) (rejecting plaintiff's claim of procedural unconscionability and noting that the contract issue "was a

---

[4] Defendants describe the "burn-off" guaranty as follows: "A burn-off guarantee limits the principals' liability to zero once a given number of units is sold. In this case, Hudson Capital principals agreed with Merrill, through Mr. Kumnick, that any principal payment guaranty would 'burn off,' that is, be reduced to zero, once 225 units were sold." (Defs.' 56.1(b)(3)(C) ¶ 8.) Defendants describe "mandatory partial pay down" as a pay off of the Loan "in agreed amounts if specific number of units remained unsold after certain specified dates." (*Id.*)

commercial contract with sophisticated, commercial entities on either side.").
Accordingly, there is no genuine issue of fact that Defendants breached the Guaranties.

Finally, pursuant to the terms of the Limited Joinder, Defendants are jointly and severally liable for amounts misappropriated by Bridgehampton. Defendants deny this statement and in support cite the affidavits of Defendants Andrew Greenbaum and Seth Frohlich (which are identical). These affidavits, however, contain no statements regarding the Limited Joinder. Even so, statements in an affidavit containing legal conclusions are inadmissible. *Holman v. Revere Elec. Supply*, No. 05-2057, 2005 WL 3046251, at *1 (7th Cir. Nov. 14, 2005) (holding that trial court did not abuse its discretion in striking improper legal conclusions from summary judgment affidavits).

GEBFS has presented undisputed evidence that Defendants breached the Limited Joinder. Defendants do not contest that they each executed the Limited Joinder or that GEBFS has complied with all duties imposed upon it pursuant to the Limited Joinder. In addition, the undisputed evidence demonstrates that Bridgehampton has failed to comply with the Sequestration Order, requiring Bridgehampton to turn over to its counsel all rents collected after the date of the Order. GEBFS has presented evidence, which Defendants have failed to refute, that demonstrates that Bridgehampton has misappropriated rents for its own use.

Accordingly, by failing to pay GEBFS for the rents misappropriated by Bridgehampton, Defendants have breached the terms of the Limited Joinder, and GEBFS has suffered damages in the amount of the misappropriated rent. None of Defendants' Affirmative Defenses relate to GEBFS' claim for breach of the Limited Joinder. Therefore, GEBFS' Motion for Summary Judgment is granted as to Count I.

*Defendants' Affirmative Defenses*

Defendants raised five affirmative defenses in their Answer. However, in their response, Defendants set forth evidence and arguments only with respect to their estoppel and failure-to-mitigate affirmative defenses. As such, Defendants' Affirmative Defenses A (waiver), B (improper acceleration), and E (contribution to damages) fail and are not a bar to the grant of summary judgment in GEBFS' favor.

In support of their estoppel defense, Defendants argue that GEBFS misrepresented the terms of the Guaranty and thereby fraudulently induced Defendants to execute the Loan Agreements. Defendants' estoppel defense fails for two reasons.

First, Defendants executed a waiver of affirmative defenses under the Limited Joinder, which provides, in relevant part, "each Principal waives all rights and defenses of sureties, guarantors . . . and agrees that its obligations under this Joinder shall be direct, primary, absolute and unconditional . . ." Illinois courts enforce broad waivers of defenses by guarantors. *See, e.g., Chicago Exhibitors Corp. v. Jeepers! of Illinois, Inc.*, 876 N.E.2d 129, 137-140 (Ill. Ct. App. 2007); *Bzozowski v. N. Trust. Co.*, 618 N.E.2d 405, 410 (Ill. App. Ct. 1993); *see also FDIC v. Rayman*, 117 F.3d 994, 998-99 (7th Cir. 1997). Defendants attempt to circumvent this waiver clause by arguing that it "does not expressly disavow the covenant of good faith implied in all contracts." (Resp. at 4) (citation omitted). This argument is unpersuasive as Defendants have not pled the breach of the covenant of good faith and fair dealing as an affirmative defense.

Second, affirmative defenses that rely on oral modifications of credit agreements are expressly barred by the Illinois Credit Agreement Act ("ICAA"), 815 ILCS 160/2, 3. *See Silverman*, 693 F. Supp. 2d at 803 (holding that ICAA barred fraudulent inducement

13

affirmative defense); *DaimlerChrysler Servs. N. America, LLC. v. N. Chicago Mktg., Inc.*, No. 02 C 5633, 2004 WL 741740, at *3 (N.D. Ill. Apr. 6, 2004) (holding that the ICAA foreclosed defendants' affirmative defense based on its allegation that it was fraudulently induced to sign guaranty by an oral promise that it would not be personally liable); *Bank One, Springfield v. Roscetti*, 723 N.E.2d 755 (Ill. App. Ct. 1999) (holding that personal guaranty of floor plan financing agreement is a credit agreement under the ICAA, and any alleged oral promise to not enforce or to modify the terms is barred by the ICAA).

Section 2 of the ICAA provides that "[a] debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing . . ." 815 ICLS 160/2. As noted by Judge Coar in *Westinghouse Elec. Corp. v. McLean*, 938 F. Supp. 487, 492 (N.D. Ill. 1996), the legislature concluded that "justice was best served by putting all parties to covered transactions on notice that the agreement will be enforced as written. Winks and nods and whispered promises to deviate therefrom would not be enforced."

Defendants do not dispute that the Guaranty and Limited Joinder are credit agreements under the ICAA. Again, Defendants attempt to skirt the ICAA by arguing that it does not preclude an affirmative defense of breach of the covenant of good faith. This argument is not persuasive for the reasons set forth above. Even more, the one case Defendants cite in support of its argument is entirely distinguishable. In *Finova Capital Corp. v. Slyman*, No. 01 C 6244, 2002 WL 318294, at *5-7 (N.D. Ill. Feb. 25, 2002), the court struck all of defendants affirmative defenses at the pleading stage because they were barred by the ICAA, among other reasons. *Id.* ("The court

concludes that, regardless of whether defendants waived the right to raise affirmative defenses via the agreements they entered into with plaintiff, defendants' affirmative defenses do not stand up to scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, all three affirmative defenses are hereby stricken.").

In support of their failure-to-mitigate defense, Defendants argue that GEBFS failed to consider opportunities for Bridgehampton to sell the properties and cure some or all of its default. (Resp. at 6-7.) Defendants fail to cite any authority that a duty to mitigate damages exists where a party has unconditionally guaranteed payment. *N. Trust Co. v. VII South Michigan Assocs.*, 657 N.E.2d 1095, 1105 (Ill. App. Ct. 1995) ("An unconditional guaranty does not require a creditor to attempt collection from the principal debtor or collateral before seeking collection from the guarantor."); *Grossich v. Collet*, No. 89 C 0144, 1989 WL 81977, at *2 (N.D. Ill. July 10, 1989) ("while a duty to mitigate damages is generally imposed in contract cases, we find that it has no application where a party has unconditionally guaranteed payment on a note.").

*Amount of Judgment*

Judgment is entered against Defendants as follows: (1) all Defendants on Count I of the Amended Complaint, which alleges a breach-of-contract claim as to the Limited Joinder, in the amount of $46,572.19; (2) Defendant Abraham Galbut on Count II of the Amended Complaint, which alleges a breach-of-contract claim regarding the Guaranty of the Loan Agreement, in the amount of $6,261,423.81; (3) Defendant Seth Frohlich on Count III of the Amended Complaint, which alleges a breach-of-contract claim regarding the Guaranty of the Loan Agreement, in the amount of $6,261,423.81; (4) Defendant Andrew Greenbaum on Count IV of the Amended Complaint, which alleges a breach-of-

15

contract claim regarding the Guaranty of the Loan Agreement, in the amount of $6,261,423.81; (5) Defendant Neil Greenbaum on Count V of the Amended Complaint, which alleges a breach-of-contract claim regarding the Guaranty of the Loan Agreement, in the amount of $6,261,423.81; and (6) Defendant Eric Galbut on Count VI of the Amended Complaint, which alleges a breach-of-contract claim regarding the Guaranty of the Loan Agreement, in the amount of $6,261,423.81.

## CONCLUSION

For the reasons set forth above, GEBFS' Motion for Summary Judgment [45, 48] is granted.

Date: 11-2-11

JOHN W. DARRAH
United States District Court Judge